Case 15-2495, Yakov Trakhtenberg v. County of Oakland et al. Oral argument not to exceed 15 minutes per side. Ms. Speaker, for the appellant, when ready. Good morning, Your Honors, and may it please the Court. My name is Lisa Speaker, and I represent the appellant, Yakov Trakhtenberg. I would like to reserve three minutes for a comment. The purpose of the Children's Forensic Interviewing Protocol is to avoid taint of witness memory, to ensure the reliability of the child's statements, and to protect an accused from false allegations. This statutorily mandated protocol completely fell apart in this case. As the Michigan Supreme Court indicated in its opinion when it reversed my client's conviction, the child's statements were unreliable, and there were numerous violations of the Forensic Interviewing Protocol. You know, just to share at the beginning with you about my concern about your position, you kind of just touched on statutorily mandated. Meanwhile, you have to show that these defendants violated the clearly established federal constitutional rights of your client. And I frankly don't see any authority, or brief federal constitutional authority, that would show that, you know, sort of a shoddy investigation of a sexual offense is a constitutional, a violation of a clear constitutional right. I have a couple ways of addressing that, Your Honor. First of all, it is true that there has not been a case that has specifically stated that by not following a statutorily mandated Forensic Interviewing Protocol, there's been a violation of a constitutional right. There has not been a case that has said that. However, this court in the Muldawon v. City of Warren case, which involved the Section 1983 claim, and you already are familiar with it, it was cited in opposing counsel's brief. Judge Clayton wrote the majority opinion, Judge Kessler wrote concurrence, which agreed in part. But that had to do with an officer having knowledge of exculpatory evidence, which is different in this case, but the exculpatory evidence issue. And the question really came down to whether does a constitutional, does a violation, does the prosecutor have to be the one that withholds evidence,  And one of the things this court said in that case in holding that there was a violation is that there hadn't been a case that had announced that there was a constitutional violation. But looking at the framework of the law that had existed and citing other similar cases but not ones that were exactly, from other circuits that did not exactly say that piece either, this court concluded that there was a constitutional violation, even though there hadn't been a prior case that specifically articulated it in that way within the context of those types of exculpatory statements being withheld by an officer. So I would rely, first of all, on the Muldawon case for authority. I also would like to direct this court's attention, and I'm doing it in a little bit of a different way because it's an older case, the Devereux case, Devereux v. Perez. It's a Ninth Circuit case, and it actually came out the other way, but I really wanted to direct this court's attention to it, and I'll give you the site because I can't remember if it was cited or discussed in our brief. It's 218 F. 3rd, 1045, and it's a Ninth Circuit case from 2000. And the issue in that case was whether a defendant had— was there a constitutional violation of the defendant's rights when the investigative team did not follow a specific protocol technique for interviewing a child sex abuse victim. So very similar facts. And the court in the Devereux case said, well, no, there's not anything mandated. There's nothing to say that there was a constitutional violation because there's nothing that requires the officers to go about interviewing the child in a specific way. Well, the interesting thing I direct—the reason I direct your attention to that case, even though it has the opposite holding that I would like it to have, is that case came out in 2000, and it was regarding an incident or the investigation that occurred in 1994. And so to direct your attention to the Michigan framework, in 1996, the state of Michigan mandated the adoption of a protocol. And in 1998, the Governor's Task Force issued the protocol that was mandated for all the counties. And Oakland County, we adopted the Governor's Task Force protocol in its entirety. So now we're talking about a very different time period than what happened in the Devereux case in the Ninth Circuit. Just one concern is I don't see it cited in your brief. And that means that Mr. Patterson has not had any notice that you're going to be arguing this case today. And he's really impaired. I appreciate your comment, Your Honor. And I apologize. And I think the reason it wasn't cited is because it actually had the opposite conclusion. I mean, it would be— But now you're arguing and you're entitled to something. And Mr. Patterson, you know, I presume he doesn't agree with it every time. Of course, Your Honor. So let's put Devereux aside then. Let's put Devereux aside and focus on what Michigan had. And you have to look at the time of the investigation. So what was the law? What was required of officers at the time of the investigation? And our investigation in this case occurred in 2005. For incidents that were alleged to have occurred in 2004. But the protocol and the statutes were adopted and mandated in 1996 and 1998. So Officer Cashman had many years of being under the statutorily mandated regime in Michigan. So there was a clearly established right that all these interviews— the reason we have the law is to protect not only the accused, it's to protect the children, it's to prevent them from having tainted memories, it's to prevent unreliable statements. But we have a case that says that violating the protocol of unemployment raises to the level of a constitutional violation. No, as I stated earlier, there's not a case that specifically makes that statement, announces that rule. And that's why I directed your attention to the Mulhamon case as an analogy to exculpatory statements being pitted by a police officer. So here's why— Of course, in Mulhamon, the facts were a lot more egregious than here. You don't mind my saying so. At least I think they were. The record here seems to suggest that Officer Cashman may not have been familiar with the protocol as to the uncertainty of whether he was familiar. How would that relate to your argument? Well, I think that's a huge problem, Your Honor, for the justice system, when an officer claims in his testimony that he knew nothing about this protocol that had been statutorily mandated, and there's a reason why we have specific ways of doing these forensic interviews. Just like, for example, what if an officer comes into court and says, well, I've never heard of Miranda, this is totally new to me, I don't know what you're talking about. Would we accept an officer— No, but then you'd have clearly established law. Right. But in this case, we have clearly established law because we have statute and we have protocol. It has to be constitutional. And it was adopted by the county. And so that does elevate it to the level of being a constitutional violation when— That's not necessary, Your Honor. That's not—just because the county adopted it doesn't make it a violation of a constitutional violation. It's not so much the county adopted it because it was required to do so. So it's that we have the state laws. Let me step back for a minute and let's talk about why what happened in this case amounted to a due process violation for my client. Because Officer Cashman had a lot of information about this family before the first forensic interview was done. And that first forensic interview was done by an interviewer named Amy Allen. And we didn't allege that she did anything wrong in her forensic interview, but there's information that Officer Cashman had that she did not have. One, that he had prior experience with this family, that my client had apparently made multiple domestic violence calls to the police. Officer Cashman had come on multiple times to investigate. He had concluded that my client was a liar and that he told my client not to make those calls anymore. So he was already familiar with the family. He was aware that the mother of the child, Lillia Tataly, had made false allegations of abuse against my client's ex-wife, Reema, against their son so that something was up for marriage. So he was aware that this mother had a history of making false allegations. And so all that going into the first interview, there's information that was not available to the interviewer. And then Officer Cashman comes in, and he, what does he do? He goes in and interviews with a CPS worker, Cleo Spades, interviews the child. No protocol following the protocol in any way. And then it gets worse. Because after they interview my client, he calls up the mom and says, Hey, could you go talk to your child and find out if this and that happened and get back with me? And so the mother, of course, in this context of this case where there's an issue of a mother making false allegations of abuse, having that person, that's completely against the protocol to have a parent go and interview the child. But to actually ask her to go do that, go talk to your child and find out about this, that, and the other, and report back to me. And she does it. And then Officer Cashman and Spades go in and interview the child again. And throughout the interview, are directing her, the questions, very suggestive questioning, indicating what the answer should be when she doesn't answer, she doesn't answer right away. He indicates which finger maybe my client touched her with. And then she agrees, yes, it was that finger. Hugely, hugely violating my client's rights and violating the protocol. And another thing that came up in the first interview that was a huge red flag, and it should have been put everybody on notice that there were some problems here, is that the child told Amy Allen that when she's 13, she could choose who she wanted to live with. Now, I do a lot of family law appeals, and children are never supposed to know about what the legal process is. And that's a huge issue in trial courts. When a child is making a statement about what the legal process is, that shows, indicates that a parent is talking to a child inappropriately about the law. You're running out of time, so I want to go back. And I think the record is quite clear that there were numerous violations of the protocol. There was a shabby investigation. There were some things in the investigation that I think basically are shockingly inappropriate. But I want to, again, very succinctly characterize the constitutional violation. I don't know that just negligence or shoddiness gets you to the level of constitutionality. I thought I heard you say that the protocol had been adopted, and it's actually now statute, and it's the foundation of that that gets us to the constitutional level. So I'm unclear, really, about the constitutional level of this. So I do see a lot of time, but I would like to answer Judge Johnnie's question as briefly as I can. The adoption of the statute puts everybody on notice that this is an important piece. The protocol is something that has to be followed. That's what makes it clearly established. And then the constitutional violation is by misusing the questioning and interrogation process. In violation of Michigan statute, in violation of protocol, numerous times directing the child's memory violates my client's due process rights. Thank you very much, Your Honor. Your Honor. Good morning, Your Honor. Rick Patterson on behalf of the defendants. I guess I want to start by addressing what this appeal is about. They've asserted claims of malicious prosecution, false arrest, false imprisonment. Each one of those claims requires them to establish there's no probable cause for the plaintiff's arrest at the time he was arrested. Now, if the district court properly looked at this case and said, well, what is the evidence of the statute's probable cause? There's the first courthouse interview that was conducted by Amy Allen, who is a forensic interviewer, before Officer Cashman was involved in the investigation. He wasn't present at that interview. He wasn't, excuse me, conducting his investigation at that time. He began his investigation following that interview. So the claims that he somehow violated this protocol when he wasn't present or participating in the courthouse interview I think is incorrect. But during that interview, the child made statements that she was forced to touch her father on two occasions, I believe it was. So that interview that didn't involve Detective Cashman provides probable cause for those accounts of CSC. Now, subsequent to that, there was an interview with Cleo Spates from the Child Protection Services and Detective Cashman where the plaintiff admitted that he had touched his daughter. Touched her on the vagina. He said it was some old world country remedy to see if she had a stomachache. So – and amazingly, nowhere in counsel's presentation to the court did she ever mention his admissions. His admissions that he was touching his 8-year-old daughter with his finger on her vagina, that's probable cause to, you know, file a CSC claim. The following day – But only if it's done for the intent of sexual harassment, correct? That's a question in fact for a jury, your Honor, your Judge. I mean, we've – they've cited nothing, no case law to indicate that you have to have some type of evidence to show that it was for sexual gratification. That's an issue for the trier of fact. So, you know, his statements – so between the first care house interview that he was not involved in and the plaintiff's own admissions, that provides the probable cause. Once that's established, plaintiff's claims fail. The militia prosecution, false arrest, false imprisonment all go away because there's no – there's probable cause at the time. Now, in their briefs they talk about, well, she was – she testified inconsistently later on and there was – at the civil trial and there was all these other statements that she has made subsequent to that. But that's not the case. So are you saying that the interview with Detective Cashman would occur subsequent to when the probable cause was established? Yes. Okay. The interview that he was involved in that counsel takes issue with was a follow-up interview after plaintiff made his admissions. So it was after he made his admissions, that's when there was the follow-up with the daughter. And Amy Allen, who is the forensic interviewer who did the care house interview, did testify that there's nothing wrong with an officer conducting a follow-up interview. Let me ask you this. I'm not sure how we should factor this into the analysis, but from what I can tell, the plaintiff actually was never exonerated of having committed a crime. What occurred was that the Michigan Supreme Court held that he had been deprived of his right to effective counsel and subsequently the Oakland County Prosecutor's Office decided to prosecute him. But there was never any kind of adjudication, so to speak, that he didn't commit the offense. Maybe he did, maybe he didn't, but how does that factor into the analysis? Well, I think it obviously goes to the last element of the malicious prosecution plan that the action ended in the criminal defendant's favor. And here, given the Supreme Court's ruling that it was an effective assistance to counsel rather than a lack of evidence, the argument can be made, and I believe it's true, that there's no finding that it ended in his favor, but they never get beyond the probable cause aspect of it because probable cause clearly existed in this case. Now, the premise of the plaintiff's whole case is the interview protocol that was in place, and they repeatedly refer to it as a statutorily mandated protocol that all aspects must be followed. Otherwise, their claim would incur a constitutional violation, not just a violation of state statute. But if you look at the language of the protocol itself, it doesn't say that it's required. The language of it says this updated protocol encourages the use of forensic interviewing protocol when interviewing children alleged to be sexually abused. It's not a statutorily mandated – you have to have a forensic interviewer involved every single time you talk to a child. That's not what this protocol stands for, but that's what they've tried to turn it into. So if you look at the language that's actually involved in the protocol, it's not – you can't talk to a child unless there's a forensic interviewer involved. And even in this case, Amy Allen was a forensic interviewer. She did the care house interview. And Galeel Spades, who's the child protection services worker, she's also a forensic interviewer. So when she talked to the daughter after the care house interview, that was also a forensic interview. So this is not a situation where the protocol or the use of a forensic interviewer was thrown aside and they just, you know, went and talked to this daughter, to this little girl. They followed the protocol with regards to the care house interview, which was the first interview by law enforcement. Now, there's a report the mom made to CPS that didn't involve Detective Cashman or Oakland County. She – there's – in the brief they talk about her being taken to a pastor. It doesn't involve Oakland County. There's nothing that we can do about those things, and there's nothing to even indicate that we were aware of those things. And so the – I think that the case is decided on a probable cause issue because it existed based on his own admissions and the first interview. And I think that the attempts to overstate the importance of the protocol fails when you look at the language of the protocol itself. And even if, as your honors have identified, you know, even if there was maybe a technical violation, you know, first it doesn't relate to the finding – the existence of probable cause. But even so, it doesn't rise to the level of a constitutional violation. So, you know, the counsel acknowledged during our argument that there is no case that addresses this that has been previously decided. And they did reference the Ninth Circuit case, and Judge Kethledge, I appreciate the – you know, your acknowledgement that I haven't read that case or am not prepared to discuss it. But what we did identify in our brief is – and it's a district court case from the Eastern District, obviously, and so it's not binding. But Palmer v. Adams is a 2012 case that essentially involved the same protocol we're dealing with here. And in that case, the court ruled that there wasn't a clearly established right, that the protocol needed to be followed. And this – the interview that's at issue with Palmer took place two years after the interviews that are at issue in this case. So if there was no – if it wasn't clearly established at the time of the interview with Palmer, there's no way it could possibly have been clearly established two years prior to that when the interviews that are at issue here were taking place. If you're asking technical questions, I'll sit down and stop up. All right. I want to briefly address the probable cause issue that my co-counsel brought up in his argument. Probable cause to arrest exists when the facts and circumstances within the officer's knowledge and in which he is reasonably trustworthy information are sufficient in themselves to warrant a man a reasonable caution in the belief that offense has been committed. So we're talking about Officer Cashman and what was within his knowledge. And did he have reasonably trustworthy information? Well, even though Officer Cashman was not at the interview with Amy Allen, I think there was a statement in our brief, which we, I believe, corrected in the reply brief. There are all kinds of cases about the collective knowledge doctrine that law enforcement can benefit from during an investigation. Are you suggesting that this wouldn't be covered by the collective knowledge doctrine? Your Honor, I'm not familiar with that doctrine. The point I was trying to make is that Officer Cashman is the one who had knowledge about credibility issues with the family problems before. And then so before he interviewed my client, and yes, my client admitted to touching his daughter. Just like I touched my daughter when I put on diaper cream. And so that doesn't merit a CPS call. But before Cashman interviewed my client, he interviewed the child. He interviewed the child before and after he had spoken to my client. So, and I apologize, I can't answer your questions. I'm not familiar with that doctrine. So the point I was trying to make is really about what Cashman knew, because he's the one that was assigned to investigate the case. And he is the one that went to get the arrest warrant. And he didn't have probable cause, because based on his knowledge, he might not have shared it with Amy Allen about the mother making false allegations, and about this prior history where he already believed, had formed a belief that my client was a liar. But he didn't get a prior history. He has to go on the objective information with which he's presented and determine what action to take next, doesn't he? Yes, at the point of the Allen interview, he didn't have enough information to say there was probable cause. He saw in the interview notes that the child is talking about how she can live with her mom solely when she's 13 years old. And the objective information, he has the case file of this family from his own personal experience. This is not something we're trying to impute to him that he wouldn't have had knowledge about. He knew that there had been false allegations made by the mother, and that he already had formed a belief that my client was a liar. And it pulled at him to his face. Thank you, Your Honor. All right, thank you. The case is submitted.